Fate M. MARTIN, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 88–1477–T.

United States District Court, D. Kansas.

May 17, 1991.

Carol L. Boorady, Legal Services of Wichita, Wichita, Kan., for plaintiff.

Stephen K. Lester, U.S. Atty.'s Office, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion to affirm the decision of the Secretary (Doc. 10) and the plaintiff's motion to reverse the decision of the Secretary (Doc. 19). This is a proceeding under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. Plaintiff filed an application for disability benefits under Title II. Tr. 115–18. The claim was denied initially (Tr. 119–20, 124–25) and on reconsideration. Tr. 128–29, 133–34. On January 11, 1988, following a hearing, an administrative law judge (ALJ) found that plaintiff was not under a "disability" as defined in the Social Security Act. Tr. 9–16. On June 8, 1988, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Tr. 4–5. The decision of the ALJ stands as the final decision of the Secretary. Judicial review of a final decision of the Secretary is available under 42 U.S.C. § 405(g).

■ The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.…" Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989). It is not the duty of the court to reweigh the evidence, or substitute its decision for that of the ALJ. *Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir.1987). Substantial evidence, however, must be more than a mere scintilla. *Perales*, 402 U.S. at 403, 91 S.Ct. at 1428. This court's determination entails a review of "the record as a whole, and 'the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Talbot*, 814 F.2d at 1461. (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir.1965).

■ For determining whether a Social Security claimant is disabled, the Secretary has developed a five step sequential evaluation. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). If a determination of disability can be made at any one step, consideration of any subsequent steps is unnecessary. The relevant inquiry at step one is whether the claimant is engaged in substantial gainful activity. If not, step two requires the factfinder to determine whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987). If the claimant does not have a listed impairment, step three entails determining "whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.* If there is no such equivalency, the claimant must show at step four that the "impairment prevents the claimant from performing work he has performed in the past." *Id.* At the fifth step, the factfinder must determine whether the claimant has the residual functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Id.* The Secretary bears the burden of proof at step five. *Id.* 107 S.Ct. at 2294 n. 5; *Williams*, 844 F.2d at 751.

In the present case, the determination of "not disabled" was made at step five of the sequential evaluation process. It is undisputed that the burden is on the Secretary to demonstrate that the plaintiff has the residual functional capacity to perform other work in view of his age, education and work experience.

Plaintiff filed an original application for disability benefits under Title II, alleging he was disabled since May 12, 1984. Tr. 31–34. The claim was denied initially (Tr. 35–39) and on reconsideration. Tr. 41–46. On April 30, 1985, following a hearing, an Administrative Law Judge found that the

plaintiff was not disabled. Tr. 105–114. The plaintiff did not appeal from that decision.

Plaintiff subsequently applied for disability insurance benefits on February 17, 1987, alleging disability since May 12, 1984 due to a back problem, an injured right ankle, diabetes and high blood pressure. Tr. 115–19. In his Disability Report, plaintiff stated that he could not lift more than 25 pounds and could not be on his feet for more than a couple hours without a great deal of swelling and pain in the feet. Tr. 146.

Plaintiff alleged that his disability began on May 12, 1984 when he was involved in a tractor accident. Plaintiff's right ankle and pelvis were fractured. Plaintiff was discharged from St. Joseph Medical Center on May 25, 1984 with a diagnosis of an open fracture of the right ankle and fractured pelvis. The secondary diagnosis was a history of hypertension. Plaintiff was released from the hospital after surgery for an open reduction, internal fixation of the right ankle. Tr. 75. Plaintiff continued to see Dr. Donald Bailey, M.D., following his release. On September 14, 1984, Dr. Bailey released plaintiff to "do some kind of light work" but not the type of work he had done before. Dr. Bailey found plaintiff to be 25% disabled due to the pelvis fracture and ankle fracture. Tr. 89.

The vocational report dated October 23, 1984 shows that plaintiff worked in the maintenance field from 1969 until May 1984. This work involved no technical knowledge or skills nor any writing. These positions involved walking and standing the entire day, constant bending, lifting of up to 100 pounds, and carrying of 50 pounds or more over a distance of 20 to 30 feet. Tr. 95–100.

Medical records from Dr. Rodney L. Bloom, M.D., for the period of April 21, 1984 through September 8, 1986 show that plaintiff's blood pressure and blood sugars seem to be controlled with medication and diet. Dr. Bloom had concluded on June 20, 1986 that the plaintiff suffered from diabetes mellitus. Tr. 165–72.

On January 28, 1986, plaintiff saw Dr. Eyster complaining of pain in his back since doing some work. Dr. Eyster felt the pain was mostly isolated to the lower back region and was due to low back strain. Dr. Eyster encouraged plaintiff to do some extension exercises and sent him to physical therapy. Tr. 175. On February 6, 1986, Dr. Eyster removed the hardware which had been implanted in plaintiff's right ankle in 1984. Tr. 174.

Dr. Daniel Thompson, M.D., began treating the plaintiff in June 1987. Dr. Thompson felt that plaintiff could no longer lift anything due to severe back pain. Tr. 185–86. Dr. Thompson completed a medical questionnaire dated September 23, 1987. Dr. Thompson stated that plaintiff's impairments were chronic low back pain with severe pain upon bending or lifting and chronic right leg pain with a history of right ankle fracture. Tr. 187. Dr. Thompson stated that plaintiff had difficulty ambulating with a cane, and he observed bilateral positive straight leg raising at 70 degrees and diminished ankle jerks. Dr. Thompson found the condition to be stable and the plaintiff to be unable to do manual labor due to back and ankle pain. Tr. 188. Dr. Thompson found the plaintiff's range of motion of the lower back to be markedly limited with respect to forward bending. Dr. Thompson found that there was evidence of persistent joint swelling and joint pain or tenderness. Dr. Thompson also found that the plaintiff could not sit or stand for long without changing position because of the pain and numbness in his legs. Tr. 189. Dr. Thompson stated that plaintiff stands bent forward with a cane, that plaintiff is able to bend with pain but cannot touch the floor, and that plaintiff is unable to lift. Dr. Thompson commented that plaintiff was a possible candidate for rehabilitation in a sitting job only. Tr. 192.

■ The plaintiff argues that in the present decision the Secretary reopened the previous decision on plaintiff's first application for benefits. After a careful examination of the record, the court finds that the Secretary did not explicitly or implicitly reopen the previous application for bene-

fits. The ALJ did not reconsider the merits of plaintiff's first application for benefits. Therefore, the Secretary's decision that plaintiff was not disabled on or before April 30, 1985 is entitled to res judicata effect.

■ Plaintiff argues that substantial evidence does not support the Secretary's decision that the plaintiff can perform the full range of medium work on a daily and sustained basis. Under the regulations, sedentary work, light work, and medium work are defined as follows:

(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567.

The ALJ found that the plaintiff could sit, stand or walk for 6 to 8 hours per day and that he is restricted only with regard to heavy lifting. Therefore, the ALJ concluded that the plaintiff retained the ability to perform a full range of medium work activity. Tr. 14. The court finds that the decision that the plaintiff could perform a full range of medium work is not supported by substantial evidence.

Plaintiff's daily activities are quite limited. Plaintiff testified that he "[could not] stand too long and [he could not] sit too long." Tr. 30H. Plaintiff testified that he could sit for 20 minutes at the most before he would get stiff and have to get up. He further testified that he could stand about thirty minutes. Tr. 30Z. Plaintiff lives with his mentally retarded son in a trailer house. Tr. 30R. Plaintiff does not cook. Sometimes a friend brings leftovers from her restaurant; other times the plaintiff goes to the restaurant with the friend's husband to eat. Tr. 30S. Plaintiff testified that he drives very little. Tr. 30T. Plaintiff gets up around 7:30 and often goes to eat breakfast with his friend's husband, who drives him. Tr. 30V. Plaintiff's stepdaughter comes out to clean the house and do the laundry. Plaintiff does not do the laundry or the sweeping or dusting around the house. Tr. 30V. Plaintiff goes to the grocery store every now and then, but his son must carry the groceries into the house. Tr. 30V. Plaintiff spends his time mostly watching television. Tr. 30S, 30V.

The ALJ concluded that Dr. Daniel Thompson, who indicated that plaintiff was unable to work, had not been the plaintiff's treating physician. The ALJ stated that Dr. Thompson saw the plaintiff only after plaintiff had filed a request for hearing. The ALJ further stated that plaintiff was referred to Dr. Thompson for examination by his attorney. The ALJ therefore disregarded Dr. Thompson's opinion. Tr. 14.

■ Disability is defined as the inability to perform any substantial gainful

activity by reason of certain medically determinable impairments. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Since disability is a medical determination, a Social Security claimant must provide medical evidence showing an impairment and its severity. 20 C.F.R. § 404.1512(b). A claimant who fails to provide any medical evidence will be found to be not disabled. *See, e.g., Tucker v. Sullivan,* 724 F.Supp. 825 (D.Kan.1989), *aff'd,* No. 89–3322 (10th Cir.1990). The ALJ apparently found it suspicious for the plaintiff to consult a physician. However, if plaintiff had not been consulting a physician, the ALJ would have been justified in rejecting the claim of disability due to a lack of medical evidence. A physician's opinions cannot be completely discounted because he was consulted by the claimant shortly before the hearing. There is no evidence in the record to support the finding that plaintiff's attorney referred the plaintiff to Dr. Thompson. If the opinion of a treating physician is to be disregarded, specific, legitimate reasons for this action must be set forth. *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987). The ALJ's rejection of the opinion of the treating physician was not based on specific, legitimate reasons and was therefore erroneous.

 In the Disability Report dated February 17, 1987, the interviewer reported that the plaintiff appeared to be unable to read. The plaintiff had obtained the form a few days previous and had someone at home complete part of it. Plaintiff was apparently unable to read the application prior to signing it. Tr. 153.

The plaintiff testified at the hearing that he had a third grade education and has had no other schooling or training since then. Tr. 30F. He testified that because he did not have enough education, he had been limited to performing manual labor. Tr. 30T. He also testified in response to questions from his attorney that he was unable to read even a paragraph in a newspaper or directions to build something, such as a blueprint. Tr. 30W. He testified that his stepdaughter filled out his Social Security forms for him. Tr. 30W. The plaintiff

stated that he could "just read a little." Tr. 30X. The ALJ found that the plaintiff had a "marginal education." Tr. 14. The plaintiff argues that this decision is not supported by substantial evidence. The court agrees.

The Social Security regulations governing education as a vocational factor provide in pertinent part:

(a) *General.* "Education" is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

(b) *How we evaluate your education.* The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.... In evaluating your educational level, we use the following categories:

(1) *Illiteracy.* Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as

instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) *Marginal education.* Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

. . . .

(6) *Information about your education.* We will ask you how long you attended school and whether you are able to speak, understand, read and write in English and do at least simple calculations in arithmetic. We will also consider other information about how much formal or informal education you may have had through your previous work, community projects, hobbies, and any other activities which might help you to work.

20 C.F.R. § 404.1564.

Contrary to the requirements of the regulation, the ALJ did not inquire into whether the plaintiff was able to read and write or perform simple mathematical calculations. The ALJ's decision that plaintiff has a marginal education is apparently based on the fact that plaintiff has a third grade education. The ALJ made no attempt to determine whether plaintiff's actual educational abilities fall below the marginal education level. Plaintiff's previous work was as a manual laborer. There is no indication in the record that these past work activities demonstrate any particular intellectual abilities. The record does indicate that, according to the Social Security interviewer, the plaintiff was unable to read. On remand, the ALJ shall consider the extent of plaintiff's educational abilities and determine whether the plaintiff is capable of reading, writing, and simple arithmetic.

■ The court notes that during the pendency of this action, plaintiff was found to be disabled for purposes of Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, commencing February 22, 1988. The Appeals Council found that plaintiff was a person closely approaching advanced age as of the application date (February 22, 1988); on September 25, 1988, plaintiff attained age 55, which is defined as an individual of advanced age; that he had limited or less education; and that he retained the residual functional capacity (RFC) to perform sedentary work. Applying the grids (Rules 201.10 and 201.02), the Appeals Council found the plaintiff to be disabled since February 22, 1988, the date of the SSI application. *See* Doc. 22 (plaintiff's motion to take judicial notice). The same standards govern the determination of disability for both disability benefits and SSI benefits. The Secretary's factual findings on the SSI application are binding on the Secretary in this disability determination. The Secretary's determination that plaintiff retained the RFC to perform only sedentary work as of February 22, 1988 is binding on the Secretary. Under the grids (Rules 201.02 and 201.10), the plaintiff is also disabled for purposes of disability insurance benefits, commencing no later than February 22, 1988. On remand, the Secretary shall award disability insurance benefits to the plaintiff commencing February 22, 1988. Further, the Secretary shall consider whether the plaintiff's disability has an onset date of prior to February 22, 1988. Specifically, the Secretary shall reconsider plaintiff's RFC from April 30, 1985 and February 22, 1988 and shall make specific inquiries into plaintiff's educational abilities. If the Secretary finds plaintiff to have been disabled prior to February 22, 1988, the Secretary shall award disability benefits from the earlier date.

IT IS BY THE COURT THEREFORE ORDERED that the Secretary's motion to affirm (Doc. 10) is hereby denied.

IT IS FURTHER ORDERED that the plaintiff's motion to reverse the decision of the Secretary (Doc. 19) is hereby granted. The decision of the Secretary is reversed and the action is remanded to the Secretary for an award of disability benefits commencing February 22, 1988 and for further

proceedings consistent with this Memorandum and Order.