**James D. KEDDIE, Plaintiff,**

v.

**John J. CALLAHAN, Ph.D., Acting Commissioner of Social Security, Defendant.**

**Civil Action No. 94–1561–FGT.**

United States District Court, D. Kansas.

Sept. 24, 1997.

Frank J. Kamas, Render Kamas, L.C., Wichita, KS, David H.M. Gray, Gragert, Hiebert & Gray, Wichita, KS, for Plaintiff.

Emily B. Metzger, Office of U.S. Atty., Wichita, KS, for Defendant.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This is an action for judicial review of a final agency determination by the Social Security Administration to deny plaintiff's application for benefits. The court has considered the briefs filed by the plaintiff and the Commissioner, as well as the administrative record and the applicable law, and is prepared to rule.

On October 30, 1992, plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging disability as of December 12, 1990. (Tr. 80–82). Plaintiff's application was denied initially and on reconsideration. (Tr. 83–92; 99–100). Plaintiff received an administrative hearing on September 23, 1993. On April 9, 1994, the Administrative Law Judge ("ALJ") issued his ruling that plaintiff was not disabled. (Tr. 9–20). The Appeals Council denied plaintiff's request for review. (Tr. 4–5). Thus, the decision of the ALJ rests as the Commissioner's final determination.

### I. Evidence

Plaintiff was born on May 16, 1946. (Tr. 34). He has a high school education, plus law enforcement training. (40, 53). Plaintiff has worked as a farmer, an oil field plant operator, a parts store manager and, most recently, as a police officer for the City of Kinsley, Kansas, for more than six years. (Tr. 40–43). Plaintiff has not worked since December 12, 1990. (Tr. 37). On that date, he was feeding dogs in the city pound. (Tr. 38). He reached for one dog as it tried to escape and injured his back. (Tr. 38).

Plaintiff's back trouble originated with an on-the-job injury while plaintiff worked as a patching foreman for Stafford County, Kansas in 1981. (Tr. 39). Plaintiff underwent a discectomy in 1982, performed by Dr. Wakim. (Tr. 179). In 1986, Dr. Tejano performed a disc fusion. (Tr. 179). Plaintiff was able to return to work three months after the second surgery. (Tr. 179). Plaintiff testified that he has never been pain free since 1982. (Tr. 43).

For treatment of the 1990 injury, plaintiff saw Dr. Anthony Pollock. His first appointment was on January 14, 1991. Dr. Pollock suspected a breakdown of the fusion. (Tr. 188; 190). He recommended physical therapy. (Tr. 192). Plaintiff underwent physical therapy several days a week until June 1991. (Tr. 167–71). By May 28, 1991, physical therapy had not resulted in much improvement. (Tr. 188). However, the physical therapist's notes of June 18, 1991, include the

statement that plaintiff was experiencing less pain when he had been seen last. (Tr. 167).

In October 1991, plaintiff complained that his pain had increased. (Tr. 186). At this time, Dr. Pollock considered the possibility of performing a refusion. (Tr. 186). The surgery was scheduled for February 24, 1992, but was called off while plaintiff was on the operating table because plaintiff's liver enzyme readings were not normal. (Tr. 177). According to plaintiff's testimony, after plaintiff was cleared for surgery, Dr. Pollock recommended against it, telling plaintiff that because of a build-up of scar tissue, the surgery would more likely cause plaintiff more pain than reduce his pain. (Tr. 55). Dr. Pollock's notes indicate that he discussed the possible benefits and risks associated with surgery in October 1992. (Tr. 176). Dr. Pollock estimated the chances of improving plaintiff's condition at about 50%, but stated that there were no guarantees, in particular no guarantee that plaintiff would be able to return to his past work. (Tr. 176). Plaintiff opted against additional surgery. (Tr. 175).

On February 23, 1993, Dr. Pollock wrote a letter in which he stated that plaintiff had reached maximum recovery. (Tr. 173). He suffered a thirty percent impairment of his back. (Tr. 173). Dr. Pollock stated that plaintiff should not lift more than ten to fifteen pounds and work only in a sedentary job which would permit him to get up and move around. (Tr. 173). Dr. Pollock expressed the opinion that plaintiff would not be able to return to his work as a police officer. (Tr. 173).

Plaintiff testified that he did not know of any work he can perform within the area where he lives. (Tr. 46). Plaintiff testified that he did not know whether he could perform any of his past work. (Tr. 50). Two and a half months before the hearing, plaintiff applied for a position at Larned State Hospital. (Tr. 13, 46). Plaintiff testified that Dr. Wray had recommended work hardening about two months before the hearing. (Tr. 57). Plaintiff testified that he had contacted someone about that, but he did not

hear back. (Tr. 57). Plaintiff expressed an interest in completing a work hardening program and testified that he would like to work. (Tr. 51, 58).

Plaintiff testified to his daily activities. He makes his bed once in a while, does dishes and a little cooking, but he does not vacuum or keep things picked up. (Tr. 48). Plaintiff can walk up to a quarter of a mile before his pain increases. (Tr. 49). Sitting in a chair for two hours leads to severe pain. (Tr. 48–49). Plaintiff mows the lawn twice a week with a self-propelled mower, but he stops after five minutes when the bag is full, and his wife empties the bag. (Tr. 51). Plaintiff goes fishing every once in a while, but he does not catch any fish, and he alternates sitting and standing. (Tr. 51). Plaintiff testified that his pain had increased from sitting in the car and at the hearing. (Tr. 48). Standing longer than fifteen minutes or sitting longer than thirty minutes leads to increased pain. (Tr. 50–51). Plaintiff testified that he does not sleep well, and many nights, he does not go to bed at all. (Tr. 49–50).

Plaintiff suffers from other physical impairments, including chemically induced hepatitis [1] and high blood pressure. However, plaintiff does not allege, and there is no evidence in the record to suggest, that his other impairments limit his ability to work beyond the limitations posed by his back problems. Plaintiff's abnormal liver values do affect the risk posed by back surgery. However, the main reason plaintiff has opted against additional surgery is that his doctor has recommended against it, rating the chances that it would improve his condition at less than fifty percent.

The administrative hearing included the testimony of Don Goldstein, a vocational rehabilitation counselor. (Tr. 62). Goldstein testified that plaintiff's work as a parts store manager was semi-skilled, medium exertion. (Tr. 64). The skills involved are bookkeeping, supervising, ordering, and preparing financial statements. (Tr. 65). Goldstein testified that a limitation to sedentary work would preclude all past relevant employment,

---

**1.** The hepatitis is apparently a result of plaintiff's taking too much Tylenol in an effort to reduce his pain.

but that some of the skills of plaintiff's past work could transfer to sedentary jobs. (Tr. 65). The ALJ asked Goldstein to consider a person of plaintiff's age and background who was limited to sedentary work which would allow for alternating between sitting (no more than one and one half hours) and standing (no more than fifteen minutes), with only incidental walking, and did not involve more than occasional stooping or crouching or rare bending, crawling, reaching or climbing ladders. (Tr. 65–66). Goldstein responded that such a person could perform such semi-skilled jobs as payroll clerk (700 positions in Wichita), telephone solicitor (1150 in Kansas), insurance procurement clerk (1900 in Kansas) and billing clerk (2800 in Kansas). (Tr. 68). All these jobs exist in significant numbers in the national economy. (Tr. 67–69). Such a person could also perform up to 85% of the sedentary, unskilled job base. (Tr. 70). Goldstein testified that a sitting tolerance of only one hour at a time with the person sitting and standing at his pleasure would yield the same response. (Tr. 70). Goldstein testified that eighty-five percent of sedentary work is performed in the seated position, but the worker is not required to sit more than one hour without a short break. (Tr. 70).

On March 16, 1993, a residual functional capacity assessment was performed by Dr. Jack Perkins for the Social Security Administration. (Tr. 84). Dr. Perkins found plaintiff could lift up to ten pounds. He found plaintiff could stand and/or walk two hours per day (although standing for more than fifteen minutes at a time would cause pain) and sit up to six hours. (Tr. 85). He determined that due to back pain plaintiff could only occasionally climb, balance, stoop, kneel, crouch or crawl. (Tr. 86). There were no manipulative, visual, communicative, or environmental limitations noted. (Tr. 87–88).

Plaintiff engaged a human resources consultant, Jerry Hardin, in connection with his workers' compensation claim. (Tr. 238). Hardin concluded that plaintiff's injuries were disabling. (Tr. 239). In his opinion, "there are few positions which Mr. Keddie can perform for comparable pay." (Tr. 239). However, Hardin determined that his ability to work in the open labor market was reduced ninety to ninety-five percent, leaving 335 jobs plaintiff could perform. (Tr. 240–41). He believed plaintiff's earning capacity in these jobs would represent a 26% reduction from the earnings of his pre-injury work. (Tr. 241). Hardin also expressed the opinion that plaintiff would benefit from further education and retraining. (Tr. 239).

The ALJ found plaintiff was not disabled in that he could perform substantial gainful activity other than his past relevant work. In particular, the ALJ found plaintiff could alternate sitting and standing, with sitting an hour at a time, which would enable him to perform certain unskilled and semiskilled sedentary work. (Tr. 16). The ALJ found plaintiff's testimony was not fully credible with regard to his back pain and sitting tolerance. (Tr. 16–17).

## II. Standard of Review

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989). It is not the duty of the court to reweigh the evidence, or substitute its decision for that of the ALJ. *Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir. 1987). Substantial evidence, however, must be more than a mere scintilla. *Perales*, 402 U.S. at 403. This court's determination entails a review of "the record as a whole, and 'the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Talbot*, 814 F.2d at 1461. (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir. 1965).

The Commissioner uses a five-step process for deciding whether a Social Security claim-

ant is disabled. The Tenth Circuit Court of Appeals summarized the process as follows:

> In evaluating an applicant's condition to determine whether a disability exists, a series of questions are asked in turn. *See* 20 C.F.R. 404.1520(a) etc. If the claimant is presently pursuing work that constitutes gainful activity, then that person is not disabled, even if medically impaired. If the claimant is not presently doing substantial gainful activity, then the question is asked—does the claimant have a severe impairment which significantly limits his physical or mental ability to do basic work activities? If not, there is no disability. If the claimant has a severe impairment, then the question is asked—does that impairment meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, and if it has lasted or can be expected to last for at least 12 months, the person is considered disabled and there is no need to proceed further. If the impairment does not meet or equal a listed impairment, then the question is asked whether the impairment, when considered along with the applicant's residual functional capacity and the physical and mental demands of the job, prevent the applicant from doing past relevant work? If not, then there is no disability. If, however, claimant can not return to past work, the final question is whether the residual functional capacity, age, education, and work experience allow the performance of other work. If not, a finding of disability will be made.

*Kemp v. Bowen,* 816 F.2d 1469, 1474–75 (10th Cir.1987). This case was decided on the basis of the fifth step. At this step, the burden is on the Commissioner to show that there is work in the national economy that the plaintiff could perform, taking into account his residual functioning capacity, age, education, and work experience. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988). In this case, the ALJ used the testimony of a vocational expert to determine that plaintiff could perform a number of sedentary jobs.

### III. Analysis

■ Although plaintiff raises a number of particular issues, the crucial question before the court is whether the ALJ's determination that plaintiff can sit for up to one hour at a time is supported by substantial evidence. Plaintiff argues that it is not and that the ALJ's determination was based on improper analysis of plaintiff's pain, a credibility determination which did not take all relevant factors into account, and improper reliance on plaintiff's daily activities.

The court agrees that plaintiff's daily activities do not indicate an ability to sit for one hour at a time repeatedly over the course of an eight-hour work day. Plaintiff does some light housework, mows the lawn twice a week, and fishes occasionally. These activities do not speak to plaintiff's sitting tolerance.

Nevertheless, there is substantial evidence in the record to support the ALJ's determination that after February 1993, plaintiff could sit for up to one hour at a time. When Dr. Pollock released plaintiff for work, he put restrictions on what plaintiff could do, including limited lifting and postural restrictions. These did not, however, include a sitting restriction. Dr. Pollock stated an opinion that plaintiff would have trouble finding work, but never stated that he would be unable to meet the sitting requirements of sedentary work. In 1991, Dr. Pollock noted that plaintiff may have to reconsider what type of work he is able to perform. The residual functional capacity assessment in the record indicates that plaintiff can sit for up to one hour at a time. Plaintiff's own human resources consultant concluded in February 1993 that plaintiff would be unable to perform the types of work he had before, but that there was a base of 335 jobs plaintiff could perform. (Tr. 239–41).

The ALJ properly analyzed plaintiff's pain and credibility. Although he did not expressly follow the format for analyzing pain set forth in *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir.1987), he did account for all the relevant factors. Contrary to plaintiff's argument, the ALJ did not hold plaintiff to a standard of proving "constant unremitting pain," but merely considered plaintiff's claims that he suffered such pain despite contrary evidence as weighing against his credibility. Furthermore, although plaintiff had a long work history, he had a pattern of changing jobs and on-the-job injury which

diminish the significance of his earnings record as evidence of his credibility.

■ The court does agree with plaintiff's argument that he is entitled to a closed period of disability. There is not substantial evidence to support the ALJ's determination that plaintiff was able to sit long enough to perform sedentary jobs from the time of his accident in December 1990 until February 23, 1993, when his doctor released him to return to work. The residual functional capacity assessment and plaintiff's human resources consultant report, both of which indicate that plaintiff would be able to perform a limited range of work, were made after this period. There is substantial evidence in the record that plaintiff suffered an injury on December 12, 1990, and underwent treatment, including physical therapy, for that injury from that time until February 1993. At that time, Dr. Pollock expressed the opinion that plaintiff had reached maximum recovery. The decision of the Commissioner is thus reversed in part, and the Commissioner is directed to award benefits for the closed period.

**IT IS BY THIS COURT THEREFORE ORDERED** that the Commissioner's decision denying plaintiff's application for benefits is hereby affirmed in part and reversed in part. The Commissioner is directed to award plaintiff benefits for a closed period from December 12, 1990 to February 23, 1993.