**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

FERNANDO F. GUTIERREZ,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

      Defendant-Appellee.

No. 02-2220
(D.C. No. CIV-01-847 BB/DJS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **McCONNELL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Fernando F. Gutierrez applied for disability benefits and supplemental security income on March 5, 1997, contending he had been disabled since August 1, 1992, as a result of back problems. An administrative law judge (ALJ) held a hearing on plaintiff's applications in August 1998, and he issued a decision in October 1998 finding plaintiff not disabled. The ALJ found that plaintiff's scoliosis and old compression fractures were severe impairments that caused significant vocational limitations, but that plaintiff nonetheless retained the residual functional capacity (RFC) for a full range of light work. Because plaintiff had performed his past relevant work at the heavy exertional level, the ALJ found that he could not return to that work. The ALJ then looked to the Medical-Vocational Guidelines, or "grids," which provided that a person of plaintiff's age, education, and vocational background who could perform a full range of light work was not disabled. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.14. Based on the application of the grids, the ALJ concluded that plaintiff was not disabled and, therefore, was not entitled to any benefits.

Plaintiff sought review of the ALJ's decision before the Appeals Council. In connection with that review, plaintiff submitted additional medical evidence in the form of a letter from Dr. Abeyta dated December 9, 1998, which discussed examinations of plaintiff in 1995 and 1998 by Dr. Abeyta and two orthopedic

specialists in the same health system. In its decision denying review, the Appeals Council stated that it had considered this additional evidence, but found that it did not warrant changing the ALJ's decision. The Appeals Council therefore denied the request for review, making the ALJ's decision the final decision of the Commissioner. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). Plaintiff appealed that decision to the district court, which affirmed. Plaintiff now seeks review before this court.

Our review of the Commissioner's decision is limited to determining whether that decision is supported by substantial evidence and whether legal errors occurred. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). In conducting our review, we may not reweigh the evidence or substitute our judgment for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). Moreover, the scope of our review is "limited to the issues the claimant properly preserves in the district court and adequately presents on appeal[.]" *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996); *see also Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) (noting general rule that we do not review issues that were not presented to the district court); *Soliz v. Chater*, 82 F.3d 373, 375-76 (10th Cir. 1996) (noting

general rule that issues not preserved by objection to magistrate judge's recommendation are waived).

Broadly, plaintiff raises two issues on appeal. First, plaintiff objects to the Commissioner's analysis of the opinions of two physicians: Dr. Abeyta and Dr. Jones. Second, plaintiff objects to the Commissioner's determination that his RFC would permit him to perform a full range of light work. Our review of the record, including the briefs filed in the district court, shows that only some of plaintiff's arguments are adequately preserved for our review.

With respect to Dr. Abeyta, plaintiff made no direct attack on the Commissioner's analysis of that physician's reports in the district court; plaintiff argued only that Dr. Abeyta's December 9, 1998, report supported the opinion of Dr. Jones about plaintiff's RFC. The only portion of the December 9 report that plaintiff mentioned as lending support to Dr. Jones's opinion was a short paragraph that discussed Dr. Abeyta's April 24, 1995, examination of plaintiff and the results of the x-rays taken at that time. When the Commissioner objected in her brief to plaintiff's characterization of Dr. Abeyta as a treating physician and explained why Dr. Abeyta did not qualify as a treating source under the relevant regulations, plaintiff did not respond directly to the Commissioner's argument.

On appeal, plaintiff now raises several other arguments concerning Dr. Abeyta, whom he continues to characterize as a treating physician. First, he contends that the Appeals Council did not adequately discuss Dr. Abeyta's statements in his December 9, 1998, letter that plaintiff's back pain is "chronic, severe, and unabating" and that plaintiff is disabled due to his back, Aplt. App., Vol. II, at 211. Second, he contends that the ALJ did not consider all the relevant factors in determining what weight to give Dr. Abeyta's reports[1] and did not articulate appropriate reasons for not giving substantial weight to those reports. Finally, plaintiff argues that portions of Dr. Abeyta's reports other than the portion he relied on in his district court brief support Dr. Jones's opinion about plaintiff's RFC. Because none of these issues were adequately raised before the district court, we will not consider them on appeal. *See, e.g., Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1314 n.4 (10th Cir. 1998) ("We have consistently rejected the argument that raising a related theory below is sufficient to preserve an issue for appeal. Changing to a new theory on appeal that falls under the same general category as an argument presented at trial or discussing a theory only in a vague and ambiguous way below is not adequate to preserve issues for appeal." (citation and quotation omitted)).

---

[1] Only one report by Dr. Abeyta, that of his April 24, 1995, examination, was actually before the ALJ. The report of Dr. Abeyta's two examinations of plaintiff in 1998 was presented only to the Appeals Council.

We turn, then, to plaintiff's challenges to the ALJ's assessment of Dr. Jones's opinion. Dr. Jones is a specialist in occupational medicine who examined plaintiff at the request of the agency on May 5, 1998. Dr. Jones's report recites that plaintiff said he had low and mid back pain that had gradually been getting worse over the past few years. He also had intermittent paresthesia[2] in his right leg and his leg tended to give out on him occasionally. Plaintiff said he was taking a pain pill three times a day–which Dr. Jones believed to be a non-steroidal anti-inflammatory–as well as the occasional Advil. He told Dr. Jones that he used to cut and sell wood, but he had not been able to do that recently due to his back problems. Despite those problems, however, he was still able to drive, to take walks, and to do some yard maintenance.

Dr. Jones's examination of plaintiff showed "some evidence of generalized muscle wasting in all extremities." Aplt. App., Vol. II, at 201. Plaintiff had a full range of motion in his neck with no difficulty and he had no muscle spasm or tenderness in his neck. He also had a full range of motion in both wrists, both elbows, and both shoulders. Examination of plaintiff's back showed "marked kyphoscoliosis[3] in the mid back area," but no tenderness or muscle spasm. *Id.*

---

[2] Paresthesia is "[a]n abnormal sensation, such as of burning, pricking, tickling, or tingling." *Stedman's Online Medical Dictionary*, http://www.stedmans.com/section.cfm/45 (click on word).

[3] Kyphoscoliosis is a combination of kyphosis, which is a curvature of the

(continued...)

Plaintiff's forward flexion was "mildly limited at 70 degrees," he had "virtually no extension," and he could bend laterally to 20 degrees on each side. *Id.* Plaintiff's straight leg raise was negative, and there was sciatic nerve tension bilaterally. Examination of plaintiff's lower extremities showed "a mild effusion of the right knee," but no tenderness, redness, or warmth. *Id.* at 202. Plaintiff lacked 10 degrees of extension in his right knee, but his flexion was to 140 degrees and the knee was stable. His left knee had a full range of motion, as did both hips and both ankles. Plaintiff had good distal pulses in both feet, his knee and ankle deep tendon reflexes were present and equal, and he had fair muscle tone and strength in both legs. Plaintiff walked without any assistive devices and he was able to heel and toe walk. As part of his examination, Dr. Jones also reviewed the x-rays of plaintiff's spine taken on April 24, 1995.

Based on his examination, Dr. Jones gave the following opinion of plaintiff's ability to work:

> I think that Mr. Gutierrez could do some light to medium work, with frequent lifting up to twenty pounds and occasional lifting up to thirty-five pounds. He could walk for up to fifteen minutes at a time and up to two hours a day, and could stand for up to one hour at a time and up to four hours a day. He is not able to do any squatting

---

[3](...continued)
spine that causes a bowing of the back, and scoliosis, which is a lateral curvature of the spine. *See Health Central General Health Encyclopedia* , http://www.healthcentral.com/mhc/top/001241.cfm .

or kneeling on the right. He would not be able to do any crawling. He could do occasional stooping and climbing. He can push or pull up to fifty pounds. He has some mildly decreased dexterity in both hands. He should avoid work at heights, and avoid exposure to any chemicals that would be toxic to his liver.

*Id.* Dr. Jones also found that plaintiff's impairments did not affect his ability to sit. *Id.* at 207.

In considering Dr. Jones's report, the ALJ noted that the doctor's assessment of plaintiff's RFC was largely in accord with his own preliminary assessment, except that Dr. Jones was of the opinion that plaintiff could walk and stand for less time than the ALJ thought. Commenting on this difference, the ALJ stated:

> [Dr. Jones's] opinions are not totally supported by the medical evidence which shows largely unremarkable findings in terms of loss of sensation, pain on movement, reflex loss and reduced range of motion. Dr. Jones may have been influenced by the claimant's allegations of pain which the undersigned has found not to be entirely credible. Therefore, lesser weight was given to Dr. Jones'[s] opinion regarding the claimant's ability to walk and stand.

*Id.* at 15-16.

On appeal, plaintiff takes issue with this assessment of Dr. Jones's opinion by the ALJ. He first argues that the evidence does not support the ALJ's characterization of the record as showing "largely unremarkable findings in terms of loss of sensation, pain on movement, reflex loss and reduced range of motion," *id.* In particular, he points to Dr. Jones's findings that plaintiff had some

evidence of generalized muscle wasting in all extremities, marked kyphoscoliosis in the mid back area, virtually no extension of his back, and sciatic nerve tension bilaterally. Plaintiff also points to certain of Dr. Abeyta's findings that he contends support Dr. Jones's opinion, though these are not the same findings plaintiff relied on in his district court briefs. In addition, plaintiff argues that the ALJ should not have discredited Dr. Jones's opinion on the ground that Dr. Jones may have been influenced by subjective allegations of pain that the ALJ found to be incredible.

Our review of the record convinces us that the ALJ's characterization of the various findings as "largely unremarkable" is a fair one, based on the record as a whole. While one can find individual instances where, for example, a particular range of motion was limited during a particular examination, on the whole and over time, the findings as to plaintiff's range of motion were largely unremarkable. The same can be said of the other types of findings the ALJ listed.

We also note that Dr. Sun, another specialist in occupational medicine who examined plaintiff at the request of the agency in 1997, made findings fairly similar to Dr. Jones's findings, yet she arrived at a slightly different opinion of plaintiff's ability to work. Unlike Dr. Jones, Dr. Sun was of the opinion that plaintiff could lift and/or carry only twenty pounds occasionally and only five to ten pounds frequently. She also found that plaintiff's sitting was affected and

that he could sit only one to two hours without interruption for a total of six to eight hours in a day. On the other hand, Dr. Sun was of the opinion that plaintiff could stand and/or walk two hours without interruption up to a total of six hours in a day. The ALJ chose to credit Dr. Sun's opinion–which had greater lifting, carrying and sitting restrictions than did Dr. Jones's opinion, but lesser walking and standing restrictions–over Dr. Jones's opinion, because he concluded it was more in accord with the rest of the evidence. We see no error in this determination. As for the ALJ's passing comment that Dr. Jones may have been influenced by allegations of pain that the ALJ found to be incredible, the observation does not appear to have been a major factor in the ALJ's assessment of Dr. Jones's opinion, and we have determined that the assessment was otherwise supportable. Accordingly, plaintiff has not demonstrated any reversible error in the ALJ's assessment of Dr. Jones's opinion.

Plaintiff's final argument is that his RFC does not permit him to perform a full range of light work. The pertinent regulations define light work as follows:

> *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full range of light work, you must have the ability to do substantially all these activities. . . .

20 C.F.R. §§ 404.1567(b), 416.967(b).  Social Security Ruling 83-10 further

explains:

> "Frequent" means occurring from one-third to two-thirds of the time.
> Since frequent lifting or carrying requires being on one's feet up to
> two-thirds of a workday, the full range of light work requires
> standing or walking, off and on, for a total of approximately 6 hours
> of an 8-hour workday.  Sitting may occur intermittently during the
> remaining time. . . .  Many unskilled light jobs are performed
> primarily in one location, with the ability to stand being more critical
> than the ability to walk.

Soc. Sec. Rul. 83-10, 1983 WL 31251, at *6.

Plaintiff contends that the RFC assessments of Dr. Jones and Dr. Sun show

that he is incapable of performing the prolonged standing and walking required

for light work.[4]  Dr. Sun stated that plaintiff could walk and/or stand for two

hours at a time up to a total of six hours in a day, and the ALJ accepted that

---

[4]     The Commissioner argues that even if this were true, we could still affirm
the ALJ's decision because plaintiff does not dispute his ability to sit up to six
hours in a day, and light work can include jobs that      involve sitting most of the
time with some pushing and pulling of arm or leg controls.  This argument
ignores the requirements of a    *full range*  of light work.  While it is true that the
regulations place in the light category those jobs that "involve[] sitting most of
the time but with some pushing or pulling of arm-hand or leg-foot controls, which
require greater exertion than sedentary work," it is also true that "[r]elatively few
unskilled light jobs are performed in the seated position."  Soc. Sec. Rul. 83-10,
1983 WL 31251, at *5 (1983).  The occupational bases on which the grids are
founded are the unskilled occupations at each exertional level.      *Id.* at *3.  To be
able to perform a full range of light work, plaintiff must be able to perform "[a]ll
or substantially all occupations existing at [that] exertional level,"       *id.* at *6.
Because there are relatively few unskilled light jobs that can be performed while
seated, if plaintiff could perform only    *those* light jobs, he would not be able to
perform the full range of light work.

-11-

opinion in making his own RFC determination. *See* Aplt. App., Vol. II, at 16

(stating that Dr. Sun's opinion about plaintiff's ability to walk and stand was not

"substantively different" from the ALJ's own opinion). Plaintiff argues that

Dr. Sun's RFC assessment is "almost identical" to that of the claimant in *Talbot*

*v. Heckler*, 814 F.2d 1456 (10th Cir. 1987), Aplt. Opening Br. at 23, who we said

could not perform a full range of light work, and he contends that being able to

walk or stand for only two hours at a time is not sufficient to perform a full range

of light work.

Our reading of *Talbot* differs from plaintiff's. The claimant in *Talbot* was

limited to walking only two hours in a day, standing only two hours in a day, and

sitting only two hours in a day. As to this RFC, we said:

> being able to sit, stand, or walk alternately for only six hours
> collectively would seem to impose significant restrictions on
> [claimant's] ability to perform light work . . . . It is by no means
> obvious that being able to walk and stand collectively for only half
> an eight-hour day and to sit for only two hours at a time would allow
> the claimant to perform substantially all of the jobs in the range of
> light work.

*Talbot*, 814 F.2d at 1463-64. Plaintiff, however, is not so limited; he can sit,

stand, or walk, alternatively, for up to eight hours in an eight-hour day.

Nonetheless, we agree with plaintiff that his restrictions do not appear to be

entirely compatible with the performance of a full range of light work such that it

was proper for the ALJ to apply the grids. Light work requires the ability to stand

-12-

and/or walk for up to six hours a day, with intermittent sitting during the remaining time, yet plaintiff can neither stand nor walk for longer than two hours at a time before he must switch to another activity.[5] An individual who must vary his standing and sitting more frequently than at scheduled breaks "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are [performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." Soc. Sec. Rul. 83-12, 1983 WL 31253, at *4 (1983). We cannot say as a matter of law that a person with plaintiff's restrictions has the ability to perform substantially all the occupations existing at the light exertional level or to do so on a sustained and regular basis. *See* Soc. Sec. Rul. 83-10, 1983 WL 31251, at *2; *Channel v. Heckler*, 747 F.2d 577, 579-80 (10th Cir. 1984) (per curiam).

"The grids should not be applied conclusively in a particular case, . . . unless the claimant could perform the full range of work required of that [exertional] category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." *Hargis v. Sullivan*,

---

[5] The evidence does not reflect how long plaintiff must perform an alternative activity before he may return to standing or walking. Nor is it clear whether he can stand for two hours and then walk for two hours without having to sit for a time between those two activities.

945 F.2d 1482, 1490 (10th Cir. 1991). The ALJ therefore erred in applying the grids conclusively at step five of the sequential analysis. The ALJ should have solicited evidence from a vocational expert about plaintiff's ability to perform specific light jobs that may exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c) (providing that agency must find claimant can do other work that exists in significant numbers in the national economy to find claimant not disabled at step five of sequential analysis); Soc. Sec. Rul. 83-12, 1983 WL 31253, at *2 (advising use of vocational expert at step five of sequential analysis when claimant's RFC does not precisely fit any exertional category). We must reverse and remand for the ALJ to obtain vocational expert testimony.[6]

The decision of the district court is REVERSED, and the case is REMANDED with directions to remand to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Michael W. McConnell
Circuit Judge

---

[6] We note that if plaintiff were found incapable of performing any light jobs, the grids would direct a finding of disability. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.14. We also note that after being denied benefits in these proceedings, plaintiff was determined to be disabled based on a new application he filed after reaching age fifty-five. *See* Aplt. App., Vol. II, at 4.