**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 23, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AMBER BRYANT,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 18-4040
(D.C. No. 2:16-CV-01247-BCW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

Amber Bryant ("Bryant") appeals a magistrate judge's[1] order affirming the

Commissioner's denial of disability and supplemental security income benefits.

Bryant claims an administrative law judge (ALJ) improperly evaluated her medical

provider's opinions.  Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C.

§ 405(g), we reverse and remand for further proceedings.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The magistrate judge acted with the consent of the parties.  _See_ 28 U.S.C.
§ 636(c).

## Background

Bryant filed an application for both disability insurance benefits and supplemental security income, alleging disability beginning June 11, 2011, based on spinal impairments that she claims prevent her from performing even sedentary work. After the agency denied the application initially and on reconsideration, Bryant requested and testified at a hearing before an ALJ.

At step one of the five-step sequential evaluation process, *see Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010), the ALJ found that Bryant had not engaged in substantial gainful activity since her onset date. At step two, the ALJ found that Bryant suffered from three severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and obesity. But at step three the ALJ concluded that Bryant's impairments did not meet or medically equal the severity of any impairment listed in Appendix 1, Subpart P of 20 C.F.R. Part 404 (the "listings").

The ALJ then assessed Bryant with the residual functional capacity (RFC) to perform a range of sedentary work with the following restrictions:

> The claimant is able to lift and/or carry up to ten pounds on an occasional basis and up to less than ten pounds on a frequent basis; stand and/or walk up to two hours (with normal breaks) during an eight-hour workday, and sit (with normal breaks) for up to six hours during an eight-hour workday. She can push and pull as much weight as she can lift and carry. She is limited to occasional overhead reaching.

Aplt. App., Vol. 2 at 25; *see also id*. at 27 (limiting Bryant to "a range of sedentary exertion that requires [her] to be on her feet no more than two hours during the workday and that requires no more than occasional stair climbing"). Based on his RFC assessment

and testimony from a vocational expert (VE), the ALJ rejected Bryant's claim of total disability and concluded at step four that she could perform her past relevant work as a payroll clerk and administrative assistant.[2]  The ALJ also relied on the VE's testimony in finding at step five that Bryant had acquired skills from past work that are transferrable to other sedentary occupations (such as a reservation clerk) with jobs existing in significant numbers in the national economy.  The ALJ therefore denied Bryant's application.

The Appeals Council denied Bryant's request for review, making the ALJ's decision the Commissioner's final decision.  *See* 20 C.F.R. § 416.1481.  Bryant appealed that decision in federal district court, claiming that the ALJ erred by failing to give sufficient weight to the opinion of the consultative examiner and that the ALJ's rationale for rejecting that opinion is not supported by substantial evidence.  The magistrate judge affirmed the Commissioner's decision.  Aplt. App., Vol. 1 at 16.  This appeal followed.

### Discussion

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks omitted).  Under our standard of review, "we neither reweigh the evidence nor substitute our judgment for

---

[2] We note that the ALJ's rejection of Bryant's claim of total disability was based in part on her determination that portions of Bryant's testimony were not credible, but because Bryant does not challenge the ALJ's credibility determination on appeal, we do not address it.

that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted). But the agency's "failure to apply the correct legal standards, or to show us that [it] has done so" is "grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Bryant claims the ALJ incorrectly evaluated the opinions of her consultative examiner, Dr. Khalid. Specifically, she argues that the ALJ erred by discounting those opinions without citing substantial evidence and by giving greater weight to the opinions of other medical providers, some of whom evaluated her and some of whom were non-examining state agency consultants. We agree that the ALJ did not apply the correct standard in rejecting Dr. Khalid's opinions and therefore remand to the agency so the Commissioner may evaluate the medical source opinions under the proper standard.

The ALJ must consider the opinion of every medical source and "provide specific, legitimate reasons for rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). When evaluating the opinion of any medical source, an ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

4

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ must consider "all of the factors set out in" the regulations, mindful that an examining source opinion "is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

In making this determination, an ALJ is required to consider all evidence in the case record, and while the ALJ is not required to discuss all such evidence, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Thus, an ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (internal quotation marks omitted).

Dr. Khalid conducted a physical examination of Bryant in connection with her disability claims in 2013. Her examination notes indicate that Bryant's gait was unsteady, and she had decreased range of motion in her neck, lower back, shoulders, and knees. Although Bryant retained normal muscle strength and tone in her neck and back, Dr. Khalid noted that she demonstrated decreased muscle strength in her upper and lower extremities and decreased grip strength. Dr. Khalid further observed that Bryant's neurologic examination was normal with intact sensation and reflexes but that she had "difficulty getting on and off of the examination table," "needed to

5

hold onto the examination table to walk," and had decreased range of motion in her upper and lower extremities on her left side. Aplt. App., Vol. 13 at 630-631. Dr. Khalid opined that Bryant could lift and carry no more than 10 pounds with her right arm and less with her left, and that she should never reach, push, or pull, but could occasionally handle and finger. She commented that Bryant "would benefit from weight loss but her physical limitations and pain will make this difficult." *Id.* at 631. With respect to Bryant's ability to work, Dr. Khalid concluded that in an eight-hour workday Bryant could sit for up to 30 minutes at a time and three hours total, stand for five minutes at a time and one hour total, and walk for eight minutes at a time and 30 minutes total. *Id.* at 637.

The ALJ explained that she discounted Dr. Khalid's opinion because it "appears to be an aberration as it is inconsistent with other reports in the record." *Id.*, Vol. 2 at 24. But our careful review of the record indicates that although the ALJ cited a few instances of arguable inconsistencies, her analysis of Dr. Khalid's opinion is deficient in several respects.

First, the ALJ relied on portions of medical reports that tended to support a finding of non-disability and therefore contradicted Dr. Khalid's opinion, but she ignored other portions of the same reports that confirmed some of Dr. Khalid's observations and tended to support her conclusions. This was error, because although an ALJ is entitled to resolve conflicts in the record, *see Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991), she may not "pick and choose among medical

6

reports, using portions of evidence favorable to [her] position while ignoring other evidence," *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), or mischaracterize or downplay evidence to support her findings, *see Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987).

This impermissible cherry-picking is evident throughout the ALJ's analysis of the medical evidence. For example, the ALJ rejected Dr. Khalid's opinion in part because she did not have access to the 2013 MRI of Bryant's spine, which the ALJ characterized as indicating that Bryant "suffers from mild bilateral facet hypertrophy at L1-L2 without evidence of significant stenosis of foraminal narrowing." Aplt. App., Vol. 2 at 24. But the ALJ selected the one of five disc-spaces discussed in the MRI that showed the least impairment, ignoring the fact that the MRI impression section noted multilevel lumbar spondylosis with mild multilevel spinal and foraminal stenosis, the most pronounced of which was at L4-S1. *Id.*, Vol. 11 at 545-546. Similarly, the ALJ noted that Bryant's 2015 MRI, which Dr. Khalid could not have reviewed before issuing her 2013 opinions, "found no evidence of spinal canal or neuro foramen narrowing," *id.*, Vol. 2 at 25, but the ALJ did not discuss the fact that the same report also found "no significant changes compared to the prior study," *id.*, Vol. 18 at 888, which showed "(m)ultilevel lumbar spondylosis with mild multilevel spinal and foraminal stenosis," *id.*, Vol. 11 at 546.

Likewise, in concluding that Dr. Khalid's opinions were inconsistent with those of Dr. Bank, who treated Bryant in 2014 and 2015, the ALJ focused on the portions of Dr. Bank's notes that arguably undermined Dr. Khalid's opinions but

7

ignored other findings that were consistent with Dr. Khalid's observations. Specifically, the ALJ commented that Dr. Bank's notes "indicate that [Bryant] is neurologically intact with normal range of motion, motor strength, reflexes, and sensation in both the upper and lower extremities." *Id.*, Vol. 2 at 24. But the ALJ did not discuss other aspects of Dr. Bank's treatment notes that confirmed Dr. Khalid's observations of debilitating pain, including, among other things, that (1) Bryant had stenosis and degenerative disc disease in her lumbar spine; (2) Dr. Bank completed a DMV form for Bryant because she could walk only 300 yards before needing to stop to rest; (3) in June 2014, Dr. Bank prescribed a course of narcotics to treat Bryant's chronic neck pain and referred her for pain management and a TENS unit; (4) in October 2014, Dr. Bank referred Bryant to a spine specialist and prescribed muscle relaxant for ongoing pain; and (5) in March 2015, Dr. Bank again prescribed narcotics and referred Bryant to a spine specialist. *Id.*, Vol. 18 at 864-85. And the ALJ did not tie her comments about Dr. Bank's findings back to Dr. Khalid's opinions to explain which of Dr. Khalid's opinions were inconsistent with Bryant's treatment history under Dr. Bank's care. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (observing that when an ALJ rejects an opinion as inconsistent with those of other medical providers, the ALJ should "specifically highlight those portions of the record [that were] allegedly inconsistent").

8

The ALJ also relied on an electromyogram (EMG) testing performed by Dr. Shoari[3] in 2013 to support her conclusion that Dr. Khalid was an outlier, but she failed to address portions of Dr. Shoari's reports that supported Dr. Khalid's findings. Although the ALJ acknowledged that the 2013 EMG found evidence of mild chronic left C5 and C6 cervical root level lesion and mild to moderate chronic right and left L5 root level lesion, both indicative of a regenerative process without ongoing denervation, Aplt. App., Vol. 2 at 24; Vol. 17 at 790, she did not discuss the significance of those findings or explain why she concluded they were inconsistent with Dr. Khalid's opinions, focusing instead on other EMG findings that were "normal." *Id.*, Vol. 2 at 24. Nor did the ALJ address Dr. Shoari's recommendation that Bryant see a neurosurgeon "[g]iven her symptoms, the result of this study and her MRI scans and lack of improvement with conservative measures," *id.*, Vol. 17 at 791.

With respect to Dr. Shoari's 2014 exam, the ALJ noted that Dr. Shoari described Bryant's muscle tone and strength, reflexes, sensation in her arms and legs, gait, and station as normal, and noted that Bryant was able to perform higher level ambulation, including tandem, heel, and toe walking. But the ALJ again cherry-picked the record, failing to note Dr. Shoari's findings that (1) Bryant's nervous system was positive for dizziness, extremity weakness, and headaches; (2) her musculoskeletal system was positive for back and neck pain; (3) she suffered

---

[3] We note that the ALJ mistakenly referred to Dr. Mohammad Shoari throughout her report as "Dr. Mohammad" instead of as Dr. Shoari.

from cervical radicular pain and lumbar radicular pain; (4) her "neurologic examination shows mild weakness with left hip flexion"; and (5) he had previously referred her to a neurosurgeon to address her "cervical and lumbar spine disk problem." *Id.*, Vol. 18 at 857-58. The ALJ simply ignored these findings and did not explain how they supported the ALJ's conclusion that Bryant's EMG was "normal" and that Dr. Shoari's findings were inconsistent with Dr. Khalid's.

In addition to ignoring aspects of the reports she relied on that did not support her conclusion and failing to explain with specificity how those reports contradicted Dr. Khalid's opinions, the ALJ also failed to carefully consider other medical evidence that is arguably consistent with at least some of Dr. Khalid's conclusions. For instance, the ALJ did not mention the opinion of Dr. Malinowski, a pain specialist who gave Bryant an epidural steroid injection in 2013 and diagnosed her as suffering from "[n]umbness of left upper extremity," "[d]egenerative disk disease in the cervical region," and "[f]ailed back and failed neck surgery syndrome with radicular component in the left upper extremity." *Id.*, Vol. 10 at 480. Nor did the ALJ discuss the findings of Dr. Glines, another pain medicine specialist, who treated Bryant for chronic pain in her neck, back, and left leg and observed that she "exhibits decreased range of motion" in both her cervical and lumbar back. *Id.*, Vol. 12 at 571-73. The ALJ also did not mention Bryant's medication history, including steroid injections and various pain medications, which is noted throughout her medical records. This, too, was error. *See Clifton*, 79 F.3d at 1010 (explaining that the ALJ must discuss probative evidence she rejects).

Finally, in addition to concluding that the ALJ's selective and minimalist discussion of the medical evidence did not satisfy the rigorous standard for rejecting a consulting physician's opinions, *see Chapo*, 682 F.3d at 1291; *Hardman*, 362 F.3d at 681, we are troubled by the ALJ's interpretive characterizations of the doctors' examinations of Bryant as "essentially negative," "unremarkable," and "generally normal." Aplt. App., Vol. 2 at 24. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (explaining that an ALJ may not "make speculative inferences from medical reports" and may not reject a physician's opinion based on the ALJ's "own credibility judgments, speculation or lay opinion") (emphasis omitted).

Because we conclude that the ALJ failed to apply the correct legal standard in evaluating the medical evidence and explaining her reasons for discounting Dr. Khalid's opinions, we remand the case to the agency with directions to reconsider the weight to be given Dr. Khalid's opinions after conducting a more robust analysis of all of the medical evidence. *See Winfrey*, 92 F.3d at 1019 (ALJ's failure to apply the correct legal standard is grounds for reversal).

In so concluding, we decline to address the Commissioner's post hoc rationalizations for affirming the ALJ's decisions. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (explaining that "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"); *Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions

11

committed in the first instance to the administrative process"). However, the ALJ may address those additional issues on remand.

Having concluded that remand is necessary to allow the Commissioner to reevaluate the evidence under the proper standard, we do not reach the remaining issues Bryant raised on appeal, including whether the ALJ's conclusion that Bryant remained capable of sedentary work was supported by substantial evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (remanding for reconsideration of medical evidence under the proper standard and declining to reach additional issues because "they may be affected by the ALJ's treatment of this case on remand"). Depending on what the ALJ concludes after evaluating the medical evidence under the correct standards, she may reassess Bryant's RFC and reconsider her determinations about Bryant's ability to work, and we express no opinion about what the ALJ may ultimately decide on remand. *See Hamlin*, 365 F.3d at 1224 & n.16 (remanding to allow ALJ to reassess claimant's RFC and, depending on the RFC assessment, to reconsider the step four and five determinations, but "express[ing] no opinion as to what the ALJ may determine on remand").

## Conclusion

The judgment of the district court is reversed, and this case is remanded to the district court with instructions to remand to the Commissioner for further proceedings consistent with this Order and Judgment.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge